2009 ND 17

**Michelle REINHOLDT, Plaintiff and Appellee**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Defendant and Appellant.**

No. 20080210.

Supreme Court of North Dakota.

Feb. 3, 2009.

Edward B. Reinhardt, Jr. (argued) and Richard R. LeMay (appeared), Legal Services of North Dakota, Minot, ND, for plaintiff and appellee.

Jean R. Mullen (argued), Special Assistant Attorney General and Jeanne Steiner (appeared), Assistant Attorney General, Office of Attorney General, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] The North Dakota Department of Human Services ("Department") appeals a district court judgment reversing the Department's determination that Michelle Reinholdt ("Reinholdt") has assets in excess of the $3,000 limit for Medicaid eligibility. We conclude the Department correctly determined Reinholdt's available

assets exceed the limit for Medicaid eligibility. We reverse the district court judgment and reinstate the Department's decision.

## I.

[¶ 2] Doctors diagnosed Reinholdt with Huntington's Disease in 1997. At the time, Reinholdt and Loren Reinholdt were married. By December 2004, Huntington's Disease incapacitated Reinholdt. On December 15, 2004, Reinholdt's sister and brother, Kristi Hager ("Hager") and Jody Schroeder ("Schroeder"), were appointed to be Reinholdt's co-guardians and co-conservators. They were granted full authority over decisions relating to: residential, medical, legal, financial decision making, change in marital status, and driving.

[¶ 3] On May 18, 2006, Reinholdt was admitted to Tioga Medical Center. On May 23, 2006, she was transferred to a nursing home. Schroeder contacted Williams County on May 25, 2006 on behalf of Reinholdt to discuss Medicaid eligibility. Williams County requested that Loren Reinholdt complete an asset assessment to determine Reinholdt's asset eligibility as required by the Medicaid spousal provisions. Loren Reinholdt complied with Williams County's request.

[¶ 4] Hager and Schroeder signed a settlement agreement detailing a divorce between Reinholdt and Loren Reinholdt on May 24, 2006. The district court entered a divorce judgment on May 31, 2006 incorporating the terms of the settlement agreement. The judgment provided Loren Reinholdt shall have full custody of the minor children and be entitled to claim the children as dependents for income tax purposes. Because Reinholdt was totally disabled, neither party had an obligation to the other for child support. Loren Reinholdt was granted all automobiles, their home, and the debts associated with these assets. Loren Reinholdt was ordered to pay off all credit cards and debts in the parties' names and pay for all expenses and costs associated with the children. Each party received his or her own personal property, checking and saving accounts, and retirement accounts. On June 15, 2006, the asset assessment was completed for the Department, and it stated Loren Reinholdt owned a 401K retirement account valued at $142,026.12.

[¶ 5] On December 27, 2006, Williams County received a Medicaid application for Reinholdt. Williams County denied the application on February 15, 2007. The denial was described by the Department during the appeal process:

The denial notice is lengthy and confusing. It states two reasons for the denial, one being that the transfer of Reinholdt's assets in the divorce constituted a disqualifying transfer, and the other being that the transfer by her guardians of her assets in the divorce was a breach of fiduciary duty and the transferred assets are considered available assets.

[¶ 6] Reinholdt's guardians filed a Motion for Clarification on April 16, 2007 regarding the divorce judgment with the district court. The district court entered an Order of Clarification, explaining the distribution of the parties' assets and debts. The district court also clarified the terms of the judgment pertaining to the parties' minor children.

[¶ 7] Reinholdt's guardians appealed Williams County's denial of Medicaid benefits and received a hearing before an administrative law judge ("ALJ"). The issue before the ALJ was whether Reinholdt had available assets in excess of $3,000, the maximum allowed for Medicaid eligibility, considering N.D. Admin. Code § 75–02–02.1–26. Section 75–02–02.1–26(1)(a), N.D. Admin. Code, provides a one-person unit with a disability is not eligible for Medicaid

if the fair market value of his or her assets exceeds $3,000.

[¶ 8] The ALJ made the following conclusion of law: "Reinholdt has the lawful right to attempt to make available the assets she should have received in the divorce settlement through an action against her guardians and the legal responsibility to prove she would be unsuccessful in pursuing such an action." In addition, the ALJ also stated the conclusion of law: "Reinholdt has failed to show that she does not have assets in excess of the maximum asset limit of $3,000." The ALJ recommended the Executive Director of the Department affirm Williams County's decision to deny Reinholdt's application for Medicaid benefits, and the Department affirmed Williams County's decision.

[¶ 9] Reinholdt appealed the Department's decision to the district court. The district court determined if Reinholdt had a money judgment against her guardians then it might be an asset, but since it is only a potential cause of action, it cannot be considered an asset. The district court also held: "The Department seeks to put [Reinholdt] in the position of hiring an attorney to file an action that would on its face be without merit. [Reinholdt] has attempted to comply, and no attorney would take the case." The district court held there was no asset; therefore, it reversed the Department's decision. The Department appeals.

## II.

■ [¶ 10] When the decision of an administrative agency is appealed from a district court to this Court, we review the agency's decision and the record compiled before the agency. *Roberts v. North Dakota Dep't of Human Servs.*, 2005 ND 50, ¶ 6, 692 N.W.2d 922 (citing *Gross v. North Dakota Dep't of Human Servs.*, 2004 ND 24, ¶ 6, 673 N.W.2d 910). When an admin-

istrative decision is appealed, questions of law are fully reviewable on appeal. *Oyloe v. North Dakota Dep't of Human Servs.*, 2008 ND 67, ¶ 7, 747 N.W.2d 106 (citing *Tedford v. Workforce Safety & Ins.*, 2007 ND 142, ¶ 7, 738 N.W.2d 29). The Department made the following conclusion of law: "Reinholdt has the lawful right to attempt to make available the assets she should have received in the divorce settlement through an action against her guardians and the legal responsibility to prove she would be unsuccessful in pursuing such an action." The issue before this Court pertains to this conclusion of law; therefore, the Department's determination is fully reviewable by this Court.

## A.

■ [¶ 11] "Medicaid is a cooperative federal-state program designed to furnish financial assistance to needy persons for their medically necessary care." *Oyloe,* 2008 ND 67, ¶ 8, 747 N.W.2d 106 (quoting *Kryzsko v. Ramsey County Soc. Servs.,* 2000 ND 43, ¶ 6, 607 N.W.2d 237). North Dakota has elected to participate in the Medicaid program. *Id.* (citing *Kryzsko,* 2000 ND 43, ¶ 6, 607 N.W.2d 237).

■ [¶ 12] To be eligible for Medicaid benefits, a person must lack sufficient assets to pay costs of necessary medical care and services. *Id.* (citing *Estate of Pladson v. Traill County Soc. Servs.,* 2005 ND 213, ¶ 10, 707 N.W.2d 473). "The Medicaid program is intended to be a payor of last resort, and other available resources must be exhausted before [M]edicaid will pay for an individual's care." *Roberts,* 2005 ND 50, ¶ 7, 692 N.W.2d 922 (citing *Wahl v. Morton County Soc. Servs.,* 1998 ND 48, ¶ 18, 574 N.W.2d 859). The Department adopted rules in N.D. Admin. Code ch. 75–02–02.1 to determine eligibility for Medicaid benefits. *Oyloe,* 2008 ND 67, ¶ 8, 747 N.W.2d 106 (citing

*Kryzsko,* 2000 ND 43, ¶ 6, 607 N.W.2d 237). A one-person unit is eligible for Medicaid benefits if the value of that person's assets does not exceed $3,000. N.D. Admin. Code § 75–02–02.1–26(1)(a).

[¶ 13] Asset is defined as: "any kind of property or property interest, whether real, personal, or mixed, whether liquid or illiquid, and whether or not presently vested with possessory rights." N.D. Admin. Code § 75–02–02.1–01(2). Assets that are "actually available" must be considered in establishing a person's eligibility for Medicaid benefits. N.D. Admin. Code § 75–02–02.1–25(1). Section 75–02–02.1–25(1), N.D. Admin. Code, states:

> Assets are actually available when at the disposal of an applicant, recipient, or responsible relative; when the applicant, recipient, or responsible relative has a legal interest in a liquidated sum and has the legal ability to make the sum available for support, maintenance, or medical care; or when the applicant, recipient, or responsible relative has the lawful power to make the asset available, or to cause the asset to be made available.

[¶ 14] "Determining whether an asset is 'actually available' for purposes of Medicaid eligibility is largely a fact-specific inquiry depending on the circumstances of each case." *Estate of Pladson,* 2005 ND 213, ¶ 11, 707 N.W.2d 473 (quoting *Linser v. Office of Attorney General,* 2003 ND 195, ¶ 11, 672 N.W.2d 643). "[A]n asset to which an applicant has a legal entitlement is not unavailable simply because the applicant must initiate legal proceedings to access the asset." *Opp v. Ward County Soc. Servs. Bd.,* 2002 ND 45, ¶ 11, 640 N.W.2d 704 (citing *Schmidt v. Ward County Soc. Servs. Bd.,* 2001 ND 169, ¶ 14, 634 N.W.2d 506; *Post v. Cass County Soc. Servs.,* 556 N.W.2d 661, 664 (N.D.1996)). Rather, "[i]f an applicant has a colorable legal action to obtain assets through reasonable legal means, the assets are available[.]" *Makedonsky v. North Dakota Dep't of Human Servs.,* 2008 ND 49, ¶ 10, 746 N.W.2d 185 (citing *Linser,* 2003 ND 195, ¶ 11, 672 N.W.2d 643; *Opp,* 2002 ND 45, ¶¶ 22–23, 640 N.W.2d 704; *Post,* 556 N.W.2d at 665). "The 'actually available' requirement must be interpreted reasonably, and the focus is on the applicant's actual and practical ability to make an asset available as a matter of fact, not legal fiction." *Estate of Pladson,* 2005 ND 213, ¶ 11, 707 N.W.2d 473 (citing *Opp,* 2002 ND 45, ¶ 11, 640 N.W.2d 704).

### B.

[¶ 15] On appeal, the Department asserts Reinholdt's guardians failed to protect Reinholdt's assets when signing the settlement agreement dividing property in the divorce of Reinholdt and Loren Reinholdt. The Department contends Reinholdt was deprived of her fair share of the marital assets. The Department argues Reinholdt's guardians' actions amounted to a breach of their fiduciary duty, and Reinholdt has a colorable cause of action against her guardians based on this breach. The Department asserts this cause of action is an available asset. Reinholdt contends she merely has a potential cause of action against her guardians; therefore, the cause of action is not an available asset.

[¶ 16] To access this asset, Reinholdt would have to initiate a legal proceeding against her guardians for breach of fiduciary duty. Because she has the legal ability to pursue this cause of action, it appears to be an actually available resource. *Post,* 556 N.W.2d at 664 (citation omitted). However, just because a Medicaid applicant has the ability to sue another to obtain an asset does not necessarily mean the asset is "actually available."

Rather, we look to whether the "applicant has a colorable legal action to obtain assets through reasonable legal means." *Makedonsky*, 2008 ND 49, ¶ 10, 746 N.W.2d 185 (citing *Linser*, 2003 ND 195, ¶ 11, 672 N.W.2d 643; *Opp*, 2002 ND 45, ¶¶ 22–23, 640 N.W.2d 704; *Post*, 556 N.W.2d at 665). In addition, the central issue is "an applicant's actual and practical ability to make an asset available as a matter of fact, not legal fiction." *Post*, 556 N.W.2d at 664. We have noted: "Interpretation of the 'actually available' requirement must be 'reasonable and humane in accordance with its manifest intent and purpose.'" *Id.* (citation omitted).

[¶ 17] The Department contends Reinholdt's co-guardians and co-conservators breached the fiduciary duty owed to Reinholdt by signing the divorce settlement agreement. When dealing with a protected person's property, a conservator must act as a fiduciary, "and must follow the standards observed by a prudent person dealing with the property of another." *Hinschberger v. Griggs County Soc. Servs.*, 499 N.W.2d 876, 880 (N.D.1993) (citation omitted). "A guardian or conservator is also a fiduciary who owes a high degree of good faith to the ward or protected person[.]" *Matter of Adams Trust*, 1997 ND 19, ¶ 11, 559 N.W.2d 221 (citations omitted).

[¶ 18] Reinholdt's guardians owed her a fiduciary duty and may have breached that fiduciary duty by relinquishing her right to essentially all of the marital assets. *Id.* At oral argument, counsel for Reinholdt stated: "What the guardians were doing in this case was essentially trying to take care of the children." Reinholdt's counsel further asserted: "[Reinholdt] has been by all accounts a wonderful mother and one of the things a good mother would do is make sure that her children are taken care of if she is not able to do it

herself." While this may be true, Reinholdt's guardians owed her a high degree of good faith, and they were obligated to act with prudent care when dealing with her property. *Matter of Adams Trust*, 1997 ND 19, ¶ 11, 559 N.W.2d 221 (citations omitted); *Hinschberger*, 499 N.W.2d at 880 (citations omitted).

[¶ 19] An applicant for Medicaid assistance may not disclaim an interest in all marital assets in a divorce proceeding in order to financially qualify for such assistance. *See generally*, N.D. Admin. Code § 75–02–02.1–33.2. There is no basis to assume a guardian or conservator, who is obligated to act on behalf of the protected person, can take the same action without consequence to the protected person. Because Reinholdt's guardians gave up nearly all of the marital assets in the divorce, including Loren Reinholdt's retirement account valued at $142,026.12 as of June 15, 2006, Reinholdt has at least a colorable claim against her guardians for breach of fiduciary duty. *Makedonsky*, 2008 ND 49, ¶ 10, 746 N.W.2d 185 (citations omitted). We hold Reinholdt has failed to demonstrate she lacks the actual and practical ability to obtain the available asset by suing her guardians for breach of fiduciary duty.

C.

[¶ 20] A person applying for Medicaid has the responsibility to provide information sufficient to establish his or her own eligibility. N.D. Admin. Code § 75–02–02.1–02.1. A Medicaid applicant has the burden of establishing an asset is not "actually available." *Opp*, 2002 ND 45, ¶ 22, 640 N.W.2d 704. A Medicaid applicant also has the burden to show a legal action to obtain an available asset would be unsuccessful. *Makedonsky*, 2008 ND 49, ¶ 10, 746 N.W.2d 185 (citing *Linser*, 2003 ND 195, ¶¶ 11–12, 672 N.W.2d 643; *Opp*,

2002 ND 45, ¶¶ 22–23, 640 N.W.2d 704; *Post,* 556 N.W.2d at 665). Therefore, Reinholdt had the burden to prove the asset at issue is not actually available and that a legal action against her guardians for breach of fiduciary duty would be unsuccessful.

[¶ 21] Reinholdt notes she contacted attorneys attempting to bring an action against her guardians, but was unable to find an attorney willing to represent her in a lawsuit against her guardians. At the administrative hearing, Melissa Hauer, Legal Advisory Services Attorney for the Department, testified as to the content of letters sent by attorneys to Reinholdt. The letters were not ultimately allowed into evidence by the ALJ. However, Hauer's testimony as to the content of the letters was allowed into evidence.

[¶ 22] Hauer testified she saw letters from three attorneys. Hauer testified from her understanding, two Minot law firms indicated they would take Reinholdt's case on a contingency basis. Hauer testified a letter from one firm provided: "Our office would only consider taking the case on a 40 percent contingency basis plus costs." The end of this same letter stated: "Based upon the above, it is my opinion that you would not be successful in pursuing an action against the guardians/conservators." Hauer testified the letter from the other firm stated, "in a case with difficult issues such as this it would be taken on a contingency basis for one-third to 40 percent plus costs of a minimum of $5,000.00." The following paragraph indicated: "I'm going to decline to pursue this matter any further." The letter also stated: "This will end my involvement in this case.... I regret that we cannot undertake this project for you at this time." When asked whether she thought that firm was willing to take the case, Hauer testified: "I'm not sure what

they said. They seem to be indicating that they would take it on a contingency basis." Hauer also testified a letter from a third law firm indicated they would not take the case, based on the facts relayed to them.

[¶ 23] Reinholdt had the burden to prove the asset at issue, a cause of action against her guardians for breach of fiduciary duty, is not actually available. She also had the burden to prove that a legal action against her guardians would be unsuccessful. Reinholdt failed to meet these burdens.

### III.

[¶ 24] We conclude the Department correctly determined Reinholdt's available assets exceed the limit for Medicaid eligibility, because Reinholdt's cause of action against her guardians for breach of fiduciary duty is an available asset. We have considered the remaining issues and arguments raised by both parties. They are either unnecessary to this decision or are without merit. We reverse the district court judgment and reinstate the Department's decision.

[¶ 25] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.